UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EILEEN S.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. 3:19-cv-05083-BAT

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING WITH PREJUDICE**

Plaintiff appeals the denial of her application for Social Security Disability Insurance. Plaintiff contends the Administrative Law Judge ("ALJ") committed reversible error when she (1) failed to adequately account for Plaintiff's limitations in her residual functioning capacity ("RFC") assessment (including limitations to occasional reaching and management of normal work-related stress); (2) failed to resolve an apparent conflict between a restriction to occasional reaching and jobs identified by the Vocational Expert ("VE"); (3) rejected the opinion of consultative examiner, Dr. Alexander Patterson; (4) rejected Plaintiff's complaints; and, (5) rejected lay witness testimony.

The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

On January 6, 2016, Plaintiff filed an application for Social Security Disability Insurance benefits. The application was denied initially and on reconsideration. Tr. 18. A hearing was held

on December 6, 2017. On January 31, 2018, the ALJ issued a decision that the Plaintiff was not disabled. In making that determination, the ALJ utilized the five-step disability evaluation process (20 C.F.R. §§ 404.1520, 416.920). The ALJ determined at steps one through three, that Plaintiff has the following severe impairments: right shoulder degenerative joint disease; migraines; major depressive disorder; anxiety disorder; and these impairments did not meet the Listings (20 C.F.R. Part 404, Subpart P. Appendix 1). Tr. 20.

The ALJ assessed Plaintiff's RFC as follows: The plaintiff can perform a full range of work except she should not climb ladders, ropes, and scaffolds; she can frequently crawl; she can occasionally reach overhead with the right upper extremity; she has sufficient concentration, persistence, and pace to complete simple, routine tasks in two-hour increments for a normal workday and workweek, with normal breaks; she should not be required to work closely with the general public; and, she should be in a workplace with few changes to the work setting. Tr. 22.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a medical assistant. Tr. 27. At step five, the ALJ relied on a VE, who testified Plaintiff could perform jobs such as kitchen helper (DOT #318.687-010), recycler (DOT #929.687-022), and hand packager (DOT #920.587-018). Tr. 28.

Accordingly, the ALJ concluded that the claimant was not disabled. Tr. 28. Plaintiff requested review and on December 10, 2018 the Appeals Council denied review making the ALJ's decision the final agency decision. Tr. 1-7. Plaintiff timely filed this appeal pursuant to 42 U.S.C § 405(g).

**DISCUSSION**

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v.*

*Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**A.   Medical Evidence – Consultative Examiner Alexandra Patterson, PsyD**

Dr. Patterson performed a mental evaluation of Plaintiff on May 19, 2016. Tr. 335-339. Plaintiff's objection to the ALJ's handing of Dr. Alexandra Patterson's opinions is two-fold. First, Plaintiff contends that while the ALJ gave great weight to Dr. Patterson's opinion that Plaintiff appeared to be moderately impaired in managing workplace stress, the ALJ failed to include that limitation in her RFC assessment. Second, Plaintiff contends the ALJ erred in rejecting Dr. Patterson's opinion that Plaintiff "may have difficulty with consistent attendance and timeliness."

**1.   Workplace Stress**

Dr. Patterson found that Plaintiff appeared to be moderately impaired in her ability to complete work-related tasks, maintain relationships with the public, and manage workplace stress. Tr. 339 (citing Ex. 4F/5). The ALJ assigned great weight to this finding, noting that it supported "the RFC's limitation to simple and routine tasks." Tr. 25. The ALJ also noted that Plaintiff's "anxiousness on examination, with related panic episodes, and her testimony that she does not feel safe leaving the house, support these final limitations from Dr. Patterson." *Id.* Plaintiff contends however, that the ALJ erred because she failed to include any "limitation in the RFC that accounts for [her] limitations in managing workplace stress."

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental[,] supported by the

record." *Thomas*, 278 F.3d at 956 (citation and internal quotation marks omitted). The ALJ did not err.

In her RFC assessment, the ALJ noted Plaintiff has "sufficient concentration, persistence, and pace to complete simple routine tasks in two-hour increments for a normal workday and workweek, with normal breaks" and that she "should not be required to work closely with the general public, and should be in a workplace with few changes to the work setting." Tr. 22. The VE identified three unskilled jobs after being asked to assume a hypothetical individual with these limitations. Tr. 75-77. Plaintiff argues that the ALJ did not place her in a "low stress" job, but does not define how such a job would differ from those identified by the VE, which all involve the performance of simple, repetitive, and relatively unskilled tasks – along with the additional limitations of not having to work closely with the general public and having few changes in the work setting.

The ALJ's RFC assessment is also consistent with the opinions of the DDS psychological consultants who found that Plaintiff is capable of performing simple, routine tasks and familiar detailed or complex tasks due to moderately slowed pace and persistence, should not work with the general public in any intense capacity, and would do best with known routines in the workplace. Tr. 25 (citing Ex. 2A/8-10; 4A/10-1). The ALJ also noted that Plaintiff's ability on examination, her good fund of knowledge and adequate abstraction abilities, her history of panic attacks and her ability to reduce her medication and extended counseling, all supported these limitations. Thus, the ALJ's conclusions were reasonably supported by the evidence. *See Molina*, 674 F.3d at 1104 ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.")

### 2.     Attendance and Timeliness

Dr. Patterson also opined that Plaintiff "may have difficulty with consistent attendance and timeliness due to apathy and amotivation." Tr. 339. The ALJ found this limitation to be inconsistent with Plaintiff's improved mood and outlook with medication and her ability to perform basic daily activities such as dressing, bathing, and grooming without issue. Tr. 25 (citing 7F/10-11; 8F/5-6; and 4F/4).

The ALJ's finding that Dr. Patterson's opinion conflicted with Plaintiff's improvement with treatment was not error. Tr. 25, 365-66, 377-78. A conflict with other evidence in the record is a valid basis to discount an opinion (20 C.F.R. § 404.1527(c)(4)), and "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Dr. Patterson noted improvement in Plaintiff's condition and expected further improvement in the future. Tr. 24, 339. After Plaintiff saw Dr. Patterson, she was prescribed Lexapro (Tr. 24, 359) and within four weeks, she reported "lexapro very helpful," she was no longer "in as dark of a place," she was "[l]ess tense," and her "[e]xcessive worry" was "more manageable." Tr. 24, 365. Her mental status exam at this appointment was unremarkable. Tr. 24, 366. Two months later, she continued to report improvement (Tr. 24, 377) and her mental status exam was again unremarkable. Tr. 24, 378.

Moreover, Dr. Patterson tied his opinion to Plaintiff's "apathy" and "amotivation" and Plaintiff specifically reported "[b]etter motivation" with Lexapro. *Compare* Tr. 339 with Tr. 365. Thus, based on this evidence the ALJ reasonably found that "overall it appears [Plaintiff's] mental health has stabilized on her current medication, and has improved greatly since its initial plunge immediately after her son's 2015 arrest." Tr. 24.

The ALJ also found that Plaintiff's ability to perform her basic daily activities (routine activities such as dressing, bathing, and grooming) undermined Dr. Patterson's opinion. Tr. 25. An ALJ may rely on an activity to discount a claimant's subjective complaints if the activity is inconsistent with alleged symptoms. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff alleged her anxiety caused difficulty concentrating, paying attention, and organizing her thoughts (Tr. 23, 230, 235, 236, 275, 315-16, 292), but her symptoms did not interfere with her ability to complete basic activities. Tr. 24, 231-34. Plaintiff also argues that she is unable to maintain timely attendance because of her fear of leaving her home. Dkt. 10 at 9. However, Dr. Patterson specifically linked the challenged limitation to "apathy and amotivation"—not fear of leaving her home. Tr. 339. Dr. Patterson acknowledged Plaintiff's fear of leaving the house and the ALJ credited that unchallenged portion of his opinion when assessing Plaintiff's RFC. Tr. 25, 338.

Dr. Patterson's statement that Plaintiff "may have difficulty" is vague and fails to give an informed opinion. A "mere statement that [the claimant] experienced some diminution in her concentration skills [fell] short of an informed opinion that [the claimant's] pain and diminished concentration skills would significantly interfere with her ability to work." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999), as amended (June 22, 1999). In addition, this aspect of Dr. Patterson's opinion conflicts with the unchallenged opinions of Carla van Dam, Ph.D., and John F. Robinson, Ph.D., who concluded Plaintiff's moderate problems with maintaining a schedule would not preclude her from performing work that was consistent with the RFC assessment. Tr. 89-90, 103-04. While Dr. Patterson only reviewed records from 2015 (Tr. 335), Dr. Robinson considered other treatment records from 2016 (Tr. 98-99, 361, 365), which are independent if Dr. Patterson's findings and post-date Dr. Patterson's exam. *See* 20 C.F.R. § 404.1527(c)(6) (a medical source's unfamiliarity with the record is a valid basis to discount an opinion). Dr.

Robinson's opinion constitutes substantial evidence and itself serves as a valid basis to discount Dr. Patterson's opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

In summary, the ALJ provided valid reasons for discounting this portion of Dr. Patterson's opinion.

**B.     Residual Functioning Capacity Assessment**

On May 21, 2016, Dr. Derek Leinenbach examined Plaintiff for right shoulder pain. Tr. 341-344 (Ex. 5F/1-5). Although the ALJ gave great weight to Dr. Leinenbach's opinion, Plaintiff contends (1) the ALJ failed to account for Dr. Leinenbach's opinion that Plaintiff was limited to occasional reaching; and (2) there is an apparent, unresolved conflict between the ALJ's finding that Plaintiff could perform occasional overhead reaching and the jobs identified by the ALJ at step five. Dkt. 10, 4-7.

**1.     Limitation to Occasional Reaching Overhead**

The ALJ gave great weight to Dr. Leinenbach's opinion that Plaintiff has "no physical limitations other than occasional reaching with the right arm." Tr. 26 (citing Ex. 5F/3). The ALJ found this to be consistent with Dr. Leinenbach's examination noting no abnormalities apart from mildly reduced right shoulder range of motion, but normal muscle strength and grip (*id*. citing Ex. 5F/3), Plaintiff's unremarkable right shoulder x-ray (Ex. 3F/3), and her lack of treatment for her right shoulder condition. *Id.* ("While her reduced range of motion ultimately supports limiting the claimant with respect to climbing ladders, ropes, and scaffolds, Dr. Leinenbach's opinion is nonetheless consistent with the record, and carries great weight.") Tr. 26. This was not error.

Plaintiff argues however, that the error occurred when the ALJ failed to include in Plaintiff's RFC, Dr. Leinenbach's limitation of occasional reaching, overall, with Plaintiff's right

arm. The specific language used by Dr. Leinenbach in his functional assessment is that Plaintiff "can lift/carry without limitation; can "reach occasionally with the right arm, limited due to chronic right shoulder pain favored to be secondary to rotator cuff syndrome" and "can handle, finger, and feel without limitation." Tr. 343.

Plaintiff argues that a limitation of occasional reaching *overhead* by the ALJ is not sufficient because Dr. Leinenbach's limitation to reaching "occasionally with the right arm," means reaching in every direction. However, the record does not reflect that Plaintiff has difficulties reaching in every direction or that Dr. Leinenbach's assessment was based on anything other than Plaintiff's report of shoulder "discomfort" which was "most notable with overhead reaching." Tr. 341. Accordingly, it was reasonable for the ALJ to interpret Dr. Leinenbach's limitations within the parameters of Plaintiff's own complaints to him, and restrict Plaintiff to occasional overhead reaching with her right arm and never climbing or crawling. Tr. 22, 25. The fact that "ALJ could have come to a different conclusion in weighing" Dr. Leinenbach's opinion "had the ALJ interpreted [Dr. Leinenbach's opinion] . . . differently" does not undermine the ALJ's decision. *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017).

In addition to being consistent with Plaintiff's own complaints to Dr. Leinenbach, the ALJ's interpretation of Dr. Leinenbach's opinion is consistent with the unchallenged opinion of Norman Staley, M.D., upon which the ALJ also relied. Tr. 26. Dr. Staley considered Dr. Leinenbach's opinion and assigned it "great weight." Tr. 101. In turn, Dr. Staley found that Plaintiff was limited to "occ[asional] Rt [overhead] reaching" due to "chronic R sh[oulder] pain," and that "chronic R sldr pain limits use in climbing L/R/S." Tr. 26, 102; see Tr. 99 (considering Dr. Leinenbach's opinion), 101 (same). Furthermore, the ALJ noted that there was no evidence that Plaintiff had sought treatment for any shoulder complaints during the relevant

period and no evidence that this pain limited Plaintiff's ability to perform activities. Tr. 24. And, although shoulder pain was mentioned as an active problem (*see*, *e.g.*, Tr. 326, 347, 357, 383, 416, 432), Plaintiff declined treatment for this issue. Tr. 316.

The ALJ did not err in her treatment of Plaintiff's right shoulder complaint in the RFC assessment as that assessment is based on "all the relevant evidence," not just one opinion. 20 C.F.R. § 404.1545(a)(1). The ALJ, as final arbiter of any ambiguities in the record, must translate and incorporate "clinical findings into a succinct RFC." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *Petrini v. Berryhill*, 705 F. App'x 511, 512 (9th Cir. 2017) (unpublished) (affirming that the ALJ translated opinion "into an RFC that embraced the limitations found by both doctors, even though the RFC finding did not mirror the language of their opinions").

### 2. Apparent Conflict – Occasional Reaching and Jobs Identified

Plaintiff contends the ALJ failed to meet her burden at step five in showing that Plaintiff could perform the three jobs identified by the VE, because the kitchen helper and the hand packager positions require constant reaching (*see* DICOT 318.687-010, 1991 WL 672755 (G.P.O.), DICOT 920.587-018, 1991 WL 687916 (G.P.O.)), and the recycler position requires frequent reaching (DICOT 929.687-022, 1991 WL 688171 (G.P.O.)). Here again, Plaintiff contends it was Dr. Leinenbach's opinion that she "is limited to reaching in front and laterally with her right arm in addition to overhead." Dkt. 12 at 1. As previously discussed, the record does not reflect that Plaintiff has difficulties reaching in every direction or that Dr. Leinenbach's assessment was based in anything other than Plaintiff's own complaints of shoulder discomfort, most notable with overhead reaching. Moreover, although Plaintiff had reduced range of motion in one arm, she had normal strength (Tr. 24, 343), she sought no treatment for this impairment

(Tr. 24), declined treatment for it (Tr. 316), and her shoulder pain appears to have had no impact on her ability to perform daily activities (Tr. 24, 231-34).

In addition, there is no obvious or apparent conflict between the vocational testimony and the DOT. *See*, *e.g.*, *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). To ensure consistency between vocational testimony and the DOT, an ALJ must inquire about "an apparent unresolved conflict between [the vocational expert's] evidence and the DOT." SSR 00-4p, 2000 WL 1898704, at *2. But, failure to do so is only prejudicial if there is an actual conflict or if the vocational expert's explanation is deficient. *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007). The vocational expert specifically identified the limitation to occasional overhead reaching with the right arm as not covered by the DOT. Tr. 76-77. The vocational expert explained that his testimony deviated from the DOT based on his 30 years of experience as a rehab counselor. Tr. 77. This is an affirmed and reasonable basis for departing from the DOT. See SSR 00-4p, 2000 WL 1898704, at *2 (noting vocational expert's "experience in job placement or career counseling"); *accord Mickelson-Wurm v. Comm'r Soc. Sec. Admin.*, 285 F. App'x 482, 486 (9th Cir. 2008) (unpublished).

In addition, because the DOT is silent on the degree to which reaching must be performed by each arm, there is not an apparent conflict between a restriction as to one arm and requirements of the jobs at step five. *See*, *e.g.*, *Givens v. Colvin*, No. C15-5043-RBL-MAT, 2015 WL 5695309, at *8 (W.D. Wash. Sept. 10, 2015), report and recommendation adopted, No. C15-5043-RBL, 2015 WL 5695520 (W.D. Wash. Sept. 28, 2015) (rejecting that reaching limitations in only the right arm created an apparent conflict with the requirements in the DOT). Here, there is no obvious conflict between a restriction to occasional reaching overhead with one arm and the position descriptions for (1) kitchen helper, (2) hand packager, and (3) recycler reclaimer.

**C.      Plaintiff's Subjective Complaints**

Plaintiff contends the ALJ erred in discounting her subjective complaints. Dkt. 10 at 10-12. The Court finds that Plaintiff has failed to establish reversible error.

The ALJ is responsible for weighing a claimant's allegations and resolving ambiguities in the evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). An ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated . . . ." SSR 16-3p, 2017 WL 5180304, *10. If a claimant has an underlying impairment that could reasonably be expected to produce the symptoms alleged, and there is no evidence of malingering, an ALJ may discredit the claimant's subjective pain testimony by providing "specific, clear, and convincing reasons" for doing so. *See*, *e.g.*, *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999). Regardless of the standard, "questions of credibility and resolutions of conflicts in the testimony are functions solely of the [ALJ]." *Id*. Here, the ALJ provided multiple reasons for discounting Plaintiff's subjective complaints. Because the ALJ provided multiple reasons, any error is harmless if a valid reason remains. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

First, the ALJ found that Plaintiff's complaints conflicted with the objective medical evidence. Tr. 23. An ALJ must consider "the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including . . . the signs and laboratory findings . . . ." 20 C.F.R. § 404.1529(c)(4); *see*, *e.g.*, *Molina*, 674 F.3d at 1113 (discounting complaints that conflicted with mental status exam findings). The ALJ acknowledged Plaintiff's complaints of anxiety, panic attacks, irritability, difficulty concentrating, and difficulty sleeping. Tr. 23, 230, 235, 236, 275, 315-16, 292. Plaintiff argues that the ALJ failed to adequately discuss

records revealing that she often appears anxious, depressed, irritable, and distracted. Dkt. 10 at 11. However, as noted by the ALJ most of Plaintiff's symptoms were situational, stemming from her son's prosecution "for murder and sexual assault of a corpse." Tr. 23, 284, 292, 356, 378. Her symptoms were also exacerbated by other stressors, including when she learned that "[h]er brother [was] doing something bad to his own granddaughter." Tr. 23, 346. The ALJ noted, however, that despite her complaints, Plaintiff consistently demonstrated normal cognition at exams. Tr. 23-24, 312, 320, 326, 337-38, 348, 358.

Second, the ALJ found Plaintiff's symptoms improved with treatment. Tr. 24. An ALJ must consider the treatment a claimant receives when assessing her subjective complaints. 20 C.F.R. § 404.1529(c)(3)(iv)-(vi). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington*, 878 F.3d at 876. As previously discussed, Dr. Patterson noted improvement and expected further improvement in the future (Tr. 24, 339), and Plaintiff reported that the prescription of Lexapro was very helpful in relieving her depression, tenseness, and worry. Tr. 24, 365. In addition, her mental status exams at this time were unremarkable. Tr. 24, 366, 377, 378.

Based on this evidence, the ALJ did not err in finding that "overall it appears [Plaintiff]'s mental health has stabilized on her current medication, and has improved greatly since its initial plunge immediately after her son's 2015 arrest." Tr. 24. As correctly noted by the Commissioner, the RFC is the most a claimant can do despite her impairments, not without her impairments. 20 C.F.R. § 404.1545(a)(1). The ALJ found Plaintiff's improvement with treatment and medication demonstrated her symptoms were more consistent with the RFC (which included significant limitations) than her subjective complaints.

The ALJ also found that Plaintiff's daily activities were inconsistent with her subjective complaints. Tr. 24. An ALJ must consider daily activities when assessing subjective complaints (*see* 20 C.F.R. § 404.1529(c)(3)(i)), and in the Ninth Circuit, an ALJ may rely on an activity to discount a claimant's subjective complaints if the activity is inconsistent with alleged symptoms. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff alleged that her anxiety caused difficulty concentrating, paying attention, and organizing her thoughts. Tr. 23, 230, 235, 236, 275, 315-16, 292. Nevertheless, Plaintiff's symptoms did not interfere with her ability to complete basic activities. Tr. 24, 231-34, 338. She also reported she had difficulty going out and running errands because of hypervigilance and paranoia (Tr. 23, 238, 338). According to her treatment notes, Plaintiff's fear of leaving her home was not a general fear, but was specific to her worry that people would find "out her connection to [her son's] case which was publicized in the media" (Tr. 288); she felt "targeted in her community" (Tr. 356); and she feared the "other guys that were involved in the crime" (Tr. 361; Tr. 356). Nevertheless, she could go places by herself if she was having a good day. Tr. 233. She could go into a store alone while her husband waited in the car. Tr. 233. Dr. Patterson noted Plaintiff's fear of leaving the house in his opinion and the ALJ credited this unchallenged portion of Dr. Patterson's opinion when assessing Plaintiff's RFC. Tr. 25, 338.

The ALJ could reasonably infer that these activities were more consistent with the RFC assessment than Plaintiff's subjective complaints. "Even where . . . activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In sum, the evidence reflects that Plaintiff's symptoms did not interfere with her cognition or daily activities, and that her symptoms improved with time. The ALJ acknowledged

the situational nature of Plaintiff's symptoms, noting that Plaintiff's symptoms waxed and waned in response to situational stressors, like learning about allegations against her brother and learning that her son had been stabbed while in prison. Tr. 23, 346, 451; *see also* Tr. 363 (her son was "thrown in 'the hole'"), 380 (mother-in-law's death and mother's possible cancer). Dr. Patterson found Plaintiff's impairments were "secondary to family stress" (Tr. 339) and her treatment providers noted her anxiety was "due to a lot of stress in her family." Tr. 419. But symptoms caused by situational stressors are not disabling. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (holding that an ALJ did not need to include limitations in the RFC assessment caused by situational depression from life events).

Even if one of the foregoing reasons is invalid, the ALJ's finding is affirmed, as the ALJ gave several reasons supported by substantial evidence. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Carmickle*, 533 F.3d at 1162-63 (upholding an ALJ's credibility determination although two of the ALJ's reasons were invalid).

**D.      Lay Witness Testimony**

Plaintiff contends that the ALJ erred when she failed to provide germane reasons for rejecting the statements of Plaintiff's husband and sister. Dkt. 10, pp. 12-14.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). An ALJ need only provide germane reasons for discounting the testimony of lay witnesses. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ assigned little weight to the statement of Plaintiff's husband, Randy S. Tr. 26. Mr. S. stated that Plaintiff has worsening memory and ability to handle stress, sleeps poorly, and

suffers from panic attacks when out in public and does not like crowds. Additionally, he stated that Plaintiff cannot lift much and cannot reach out with her arms. *Id.* (citing Ex. 3E).

The ALJ found these statements were inconsistent with Plaintiff's decreased dosage of Xanax (alprazolam) due to a decrease in panic attacks. Although Plaintiff argues that this is an invalid finding because the record does not support that she tapered her Xanax due to decreased symptoms (Dkt. 10 at 13), the ALJ is entitled to draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Here, the record reflects that Plaintiff's Xanax (Alprazolam) prescription was initially for half of the tablet two to three times daily as needed (prn) (Tr. 312, 316, 386) and her treatment provider stated that Plaintiff would start to taper Xanax "after about a month when treatment on the Lexapro has been established . . . ." Tr. 358. But, one month later, Plaintiff reported that she was able to taper on her own, taking her dose down from twice a day to one-time per day with only an occasional extra dose. Tr. 26, 365. Given the as-needed prescription and Plaintiff's report that her anxiety was "more manageable," the ALJ reasonably inferred Plaintiff tapered her Xanax on her own due to fewer symptoms (*i.e.*, panic attacks). It is also noteworthy that all of these records post-dated Plaintiff's husband's report.

The ALJ also found Mr. S's report that he does not like Plaintiff to go out alone because "she can have panic attacks" conflicted with Plaintiff's own statements that she goes shopping alone while he waits in the car. (Tr. 26; *compare* Tr. 204 with Tr. 233). In fact, Plaintiff did not report panic attacks from simply being in public, but stated her panic attacks occurred when she was "under pressure with a lot of stress." Tr. 236. As previously noted, Plaintiff's fear of leaving her home was not general, but was specific to her worry that people would find out her connection to her son's case, which was publicized in the media" (Tr. 288); she felt "targeted in

her community" (Tr. 356); and she feared the "other guys that were involved in the crime" (Tr. 361; Tr. 356). Nevertheless, she could go places by herself if she was having a good day. Tr. 233. She could go into a store alone while her husband waited in the car. Tr. 233. As also previously noted, Dr. Patterson acknowledged Plaintiff's fear of leaving the house in his opinion and the ALJ credited that portion of his opinion when assessing Plaintiff's RFC. Tr. 25, 338. Plaintiff did not challenge that portion of Dr. Patterson's opinion.

Finally, the ALJ found Mr. S's belief that she "can't lift much weight" conflicted with examination findings showing that Plaintiff had normal strength. Tr. 26; *compare* Tr. 206 with Tr. 343. The ALJ's interpretation of these treatment records are consistent with the medical opinions of Dr. Leinenbach and Dr. Staley. Tr. 25-26, 101, 343. "Inconsistency with medical evidence is [a germane] reason" to discount lay testimony. *Bayliss*, 427 F.3d at 1218. Plaintiff attempts to recast her husband's opinion as a restriction on reaching, rather than lifting (Dkt. 10 at 13), but her husband's report is unambiguous. While her husband also reported Plaintiff had pain with reaching (Tr. 206), this report is not necessarily inconsistent with the reports of Dr. Leinenbach, Dr. Staley, or the RFC assessment.

The ALJ also assigned little weight to the statements of Plaintiff's sister, Dawn Mark. Ms. Mark stated that Plaintiff had not recovered from the trauma of her son's murder conviction, is teetering on an "emotional edge," does not do well with people outside of her "safe circle," resulting in panic attacks, and has trouble maintaining her focus. Tr. 26 (citing Ex. 14E). The ALJ found these statements to be inconsistent with Plaintiff's documented improvement after starting on Lexapro and the decreased frequency of her panic attacks. *Id.* (citing Ex. 7F/ 10-12; 8F/5-6). In addition, the ALJ found these statements to be inconsistent with objective medical examination findings that Plaintiff was able to perform serials 7s on examination and the lack of

evidence of psychosis such as delusions or hallucinations. *Id.* (citing Ex. 4F/3- 4). These are both germane reasons for discounting Ms. Mark's statement. 20 C.F.R. § 404.1527(c)(4); *Bayliss*, 427 F.3d at 1218.

The ALJ did not err as she gave germane reasons for discounting the lay testimony of Plaintiff's husband and sister.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

**DATED** this 23rd day of August, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge